# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-462


**CABLE PREJEAN**

**VERSUS**

**RIVER RANCH, LLC**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20012534
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**MARC T. AMY
JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Marc T. Amy, and Glenn B. Gremillion, Judges.


**AFFIRMED.**



**Mark D. Sikes**
**John Emory Castle, Jr.**
**Herman Edgar Garner, Jr.**
**Paul Joseph Hebert**
**Ottinger Hebert, L.L.C.**
**Post Office Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
   **River Ranch, LLC**
   **Robert W. Daigle**
   **Rodney L. Savoy**
   **River Ranch Development, LLC**
   **The Village of River Ranch Association, Inc.**

**Stephen Gary McGoffin**
**Jacques Emil deMoss**
**Durio, McGoffin & Stagg**
**Post Office Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Cable Prejean**

**David Alexander Young**
**Post Office Drawer 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Cable Prejean**

AMY, Judge.

The plaintiffs filed suit asserting detrimental reliance and seeking damages that they contend followed the opening of their business in a developing multi-use subdivision. The defendants filed a reconventional demand, seeking past due rent from the plaintiffs' occupation of the business space. The trial court denied both claims. The defendants appeal the denial of their reconventional demand. For the following reasons, we affirm.

### Factual and Procedural Background

River Ranch is a developing, multi-use subdivision in Lafayette. Referred to in the record as a traditional neighborhood development, the area features both residential and commercial property. The plaintiffs, Cable and Rose Prejean,[1] assert that they were immediately interested in the area for both residential and business purposes upon learning of its proposed development in the late 1990s. The couple first purchased a residential lot in 1998 and began building a home in the community, where they still resided at the time of trial. Furthermore, Cable Prejean began to express his interest to developer Robert Daigle about opening a business in the community. The record indicates that Mr. Daigle is a Co-Managing Member of River Ranch, L.L.C. and River Ranch Development, L.L.C. Rodney Savoy is also a Co-Managing Member.

The Prejeans, former business owners, explained that they were interested in the concept of the development. They found it appealing that, as business and home owners in the area, they could live within walking distance of work. Following discussions with the developers, the Prejeans proceeded with plans to open their

---

[1]Although the petition was filed with Cable Prejean listed as the only plaintiff, the appellants' brief references an amending petition wherein Rose Prejean and Wild Things, Inc. were named as co-plaintiffs. Other references in the record also indicate that all three were plaintiffs.

business, Wild Things, a wildlife gift store and gallery. Wild Things was to open in a mixed-use building, fronting what would become Town Square in the development. Mr. Daigle testified that he asked that the Prejeans delay the opening of their business until the development proceeded further. In particular, he felt that the development was to be enhanced by the completion of a longstanding public works project, the Camellia Street Bridge Project. Mr. Prejean denied that Mr. Daigle suggested that they delay the opening of the business. The Prejeans pursued their plans and occupied the store front on August 1, 2000. Mr. Prejean explained that there were no other buildings being built at that time.

On May 14, 2001, Mr. Prejean filed suit, asserting that they relied to their detriment on representations that River Ranch would be more quickly and fully built to suit the requirements of business owners. River Ranch, L.L.C., River Ranch Development, L.L.C., Mr. Daigle and Mr. Savoy were named as defendants. The Village of River Ranch Association, Inc. was subsequently named as a defendant. The defendants filed a reconventional demand, alleging that the plaintiffs owed past due rent on the Wild Things' retail space, a 1,000 square foot area. The defendants sought all unpaid rent and common expenses. The defendants assert that a lease exists and is evidenced by an October 11, 1999 letter signed by Cable and Rose Prejean and Robert Daigle.

The trial court denied the detrimental reliance claim. The plaintiffs do not appeal that decision. The trial court further denied the defendants' reconventional demand, finding that a lease did not exist between the parties as there was no "meeting of the minds." The trial court concluded that each party had a different opinion of the date on which rent would commence. The trial court also explained

2

that it considered whether rent was due even absent a lease, but concluded that insufficient evidence of the value of the rental space existed in the record. However, finding that the plaintiffs were occupying a space to which they were not entitled, the trial court granted the defendants' demand for eviction of the plaintiffs' business.

The defendants appeal, assigning the following as error:

A. The trial court erred in holding that there was not an agreement of "lease" between Appellants and Appellees and, therefore, there were no rental payments due from Appellees.

B. Alternatively, the trial court erred in failing to grant Appellants compensation for the value of the use of the Premises by Appellees.

C. The trial court erred in its assessment of the costs of the trial proceedings.

**Discussion**

*Existence of Lease*

The defendants first question the trial court's determination that no lease existed. The defendants note that the October 11, 1999 letter agreement demonstrates that the parties expected to enter into a formal lease arrangement at some point in time. However, no such formal lease was confected. Pointing to La.Civ.Code art. 2683, the defendants contend that the absence of this formal document does not preclude finding the existence of the legal effects of a lease. They contend that the fact that the plaintiffs continued to possess and use the retail space, absent a formal lease, indicates that the plaintiffs placed little value on such a formal lease agreement. With regard to the presence of a lease, absent written formalities, the defendants point to the letter agreement entered into by the parties.

The letter agreement, dated October 11, 1999, contains the caption "Re: Lease of Town Center Square," and reads:

Dear Cable and Rose:

As per our recent meetings and discussions, River Ranch, LLC does hereby propose to construct a building in the Town Center of The Village of River Ranch and lease a portion of that building to you for the operation of a gallery, on the following terms and conditions

(a) **Premises Leased** A portion of the ground floor of that certain mixed use building fronting River Ranch Place having approximately 1,000 square feet of gross air conditioned area.

(b) **Term of Lease** Three years.

(c) **Renewal Options** Five terms of five years each with the rent for each renewal option increased based upon increases in the CPI.

(d) **Rent Commencement Date** Substantial completion of all improvements constructed by landlord.

(e) **Rent** $1,100.00 per month for the first two years and $1,340.00 per month for the third year.

(f) **Other Sums Payable** Utilities, tenants share of property taxes, interior maintenance and repairs less and except structural repairs and major repairs to the air conditioning/heating system, tenants share of liability insurance and insurance covering the building; tenants share of common area maintenance expenses (CAM charges).

(g) **Major Repairs** All structural repairs and major repairs to the air conditioning/heating systems shall be the responsibility of landlord.

(h) **Guarantors** Cable and Rose Prejean

(i) **Tenant Improvement Allowance** Landlord will construct the building as per plans and specifications and landlord will construct, and pay for, all interior finishes subject to a tenant allowance of $40.00 per square foot of gross air conditioned area.

(j) **Estimated Constructed Completion Date** April 30, 2000.

(k) **Architectural Fees and Services** All architectural design and services shall be provided by landlord at landlord's expense.

Base[d] upon our real estate and construction cost, we feel that the above proposal is substantially below what the market rent will be within the very near future and is well below what we typically expect

4

to receive as a return on investment. Specifically, construction cost of the building, excluding site improvements, will total $105.00 per square foot. Construction of the building shell will cost $65.00 per square foot and we are affording to you a $40.00 per square foot allowance for interior finishes. Thus, the construction cost attributable to your space, excluding site improvements, totals $105,000.00.

With respect to our land costs, we are required to allocate 4,000 square feet of real estate for your business. This 4,000 square feet includes the actual building footprint for your space and all covered walkways, as well as your pro rata share of all parking and common areas for the site. For example, for each parking space required by zoning for the intended use of your site, we must allocate a minimum of 400 square feet for the construction of that parking place. In your case, the zoning ordinance requires that we allocate and provide not less than five (5) parking places. Your pro rata share of the construction cost associated with all subsurface drainage, parking improvements, and common area improvements total $8750.00. If we value the real estate associated with your intended use (4,000 square feet) times $10 00 per square foot, which is the least expensive residential property in River Ranch, your site has an allocated real estate cost of $40,000.00. When we add the building cost of $105,000.00 to the real estate cost of $40,000.00 and the parking improvement cost of $8,750.00 we arrive at a total construction and land cost of $153,750.00. We then have a 7.5% design fee associated with the project which brings our total cost of your space to $162,281.00. This does not include any allocation of the Town Square real estate or expenses.

Under ordinary circumstances, we try to make a 15% return on our investment which would have resulted in a monthly rent to you which exceeds $2,000.00. As you can see from the above proposal, our rent proposal is substantially below the return that we attempt to achieve under ordinary circumstances.

If the terms and conditions are acceptable to you, please execute this correspondence in the space provided below. Upon execution of this agreement, we will commence design of your interior space and will forward to you a formal Lease Agreement for your consideration and execution.

The letter is signed by Robert Daigle. It further indicates that it was accepted by Cable and Rose Prejean on November 9, 1999.

Louisiana Civil Code Article 2670 sets forth the essential elements of a lease, providing that: "To the contract of lease, as to that of sale, three things are absolutely

5

necessary, to wit: the thing, the price, and the consent." Furthermore, "[l]eases may be made either by written or verbal contract." La.Civ.Code art. 2683.

The trial court concluded that the parties did not share a common understanding as to the date of commencement of any agreement to lease. This failure to share a common understanding mitigates against a finding of "consent." In oral reasons for ruling, the trial court explained:

> There was talk about a lease. Nothing was ever finalized in detail. There was no talk about a commencement date. There was no talk about rental amounts, none of the details. Only that Mr. Prejean wanted 1,000 square feet in the first commercial building in the Town Square.
>
> Mr. Daigle took it upon himself to say, "Fine. I'm going to put those things in writing in the form of an offer." He wrote a letter. That letter, (we're all familiar with is "Plaintiff's Exhibit - 13") [sic]. That letter talks about the terms that would be offered, if the plaintiffs wanted to accept it, for a lease to be executed at a later date. We all know that the language that we're concerned about is the language of the commencement date of the lease.
>
> The Prejeans signed off on that document on November 9, 1999, and actually began construction, and moved into Wild Things in August 2000, a little less than a year later.
>
> A lease requires a meeting of the minds between the people involved, of the thing to be leased, the price, and consent, the most important thing. I have struggled with the idea of what is this particular document. I am of the opinion that because in the document there's reference to a lease agreement to be executed at some later date, that the document itself does not constitute a lease. At best, it would constitute a memorialization of the meeting of the minds between the parties, as to the terms it contains.
>
> So, the question becomes, "was there really a meeting of the minds?" There's been no discussion, no evidence in the court that there's ambiguity in the language. So, I'm going to sort of skip over the ambiguity issue, and get down to the consent issue.
>
> There's no question in my mind that from the testimony today, Mr. Daigle's mind-set, when he wrote the letter and signed it, was that the lease was to begin upon completion of the 1,000 square foot space, designed and built for Wild Things. No question.

6

There was also no question from the evidence in this case that the mind-set of the Prejeans was that the rental was going to begin only upon completion of the entire building within which Wild Things occupied 1,000 square feet - - about 9% of the space. That tells me that there was no meeting of the minds on commencement of the rental period, because Mr. Daigle had one mind-set, Mr. Prejean had another. They never got together and talked about it. There was no meeting of the minds, so there is no lease, which is the position of the Prejeans.

So, what do we have? We have an occupancy. The Prejeans contend that they had a right to occupy, based on their interpretation of that letter, a right to occupy, until the date came by that they say that the rental was to commence. Daigle said they were tenants. They were supposed to start paying, by his interpretation, the rental immediately. There had been no need for a lease agreement, because there had been a meeting of the minds. There was no meeting of the minds. There is no lease. I find that the legal relationship between the parties as lessor/lessee never came to pass. It's my view that the Prejeans occupy, and have occupied the space known as Wild Things, with no legal right to do so, other than the inaction of the River Ranch Development people. What that means to them, in my view, is that they owe no rent. What it means to River Ranch is they can decide that they no longer want to be inactive, and consent, or by silence, consent to the occupancy, and may evict at any time.

In short, the record supports the factual finding of the trial court in its conclusion that the parties failed to agree upon a term. As explained in the oral reasons, Mr. Daigle explained that the term "substantial completion of all improvements" indicated that rent would commence upon the time of occupancy. Mr. Prejean, however, explained that he felt that the "substantial completion of all improvements" referred to the completion of the entire building he says was originally planned. This evidence was related to Mr. Prejean's other testimony regarding his perception that the Town Center was to be developed in line with the developers' early projections. In the end, the trial court found both parties' explanations credible. It concluded that they held that they each agreed or "consented" to different terms. This type of factual finding, part of which is a pure

7

credibility determination, is not subject to reversal on appeal. This assignment lacks merit.

*Past Due Rent*

In their alternative argument, the defendants contend that, even if a lease is not found, that they are entitled to costs associated with the use of the space and with costs associated with the plaintiffs' occupancy. At the close of its oral reasons for ruling, the trial court explained that it considered such an alternative claim, stating:

> I might add that I did consider whether or not there should be any, even absent a lease, whether or not there should be any compensation for the use of the premises. But there's been no evidence as to the value of that in a non-negotiated, non-lease situation. So, for lack of any evidence as to the value of the use, I will grant none.

On appeal, the defendants question the trial court's determination that evidence was not presented as to the value of the use. They observe that the letter agreement contains an initial rent of $1,100 per month and that the agreement also indicates that this fee is less than the market rent expected at a later stage of the development. Thus, they contend sufficient evidence exists for an award.

Our review of the record indicates that, although the trial court may have indicated that it considered an alternative theory of recovery, this was not a theory of recovery introduced by the pleadings. Although the Louisiana Code of Civil Procedure does not contain a "theory of the case" requirement, it requires adequate fact pleading. Article 854 provides:

> No technical forms of pleading are required.
>
> All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs. As far as practicable, the contents of each paragraph shall be limited to a single set of circumstances.

8

Furthermore, Article 891 indicates that a petition "shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation."

In *Fitzgerald v. Tucker,* 98-2313 (La. 6/29/99), 737 So.2d 706, the Louisiana Supreme Court explained that the term "material facts," as used in La.Code Civ.P. art. 891, requires that a party allege more than mixed questions of law and fact. The term requires that the pleading party must set forth the act/omission that is to be established at trial. *Id.* The supreme court further explained that the concept of fact pleading assists in satisfying due process concerns as it provides a defendant with fair notice. *Id.* Fact pleading further limits the issues before the court and provides notice to the defendant of the facts upon which the plaintiff's claims are based. *Id.*

Our review of the record indicates that the defendants' reconventional demand does not satisfy the requirements of the Code of Civil Procedure insofar as the defendants now attempt to recover due to unjust enrichment or quantum meruit. The reconventional demand was clearly focused on recovery based on the lease. This is true of the defendants' evidence and arguments made to the trial court as well. Although the defendants included a plea for alternative relief in the event a lease was not found to exist, that plea was limited to eviction. Contained in the "Amending and Supplemental Answer to Petition for Damages and First Supplemental And Amending Petition And Reconventional Demand," this alternative plea provides:

> Alternatively, River Ranch L.L.C. and River Ranch Development, L.L.C. pray that this Honorable Court declare that there is no lease existing between the parties due to the lack of consent or meeting of the minds between the parties as to the essential elements of a lease and that, accordingly, Defendants-in-Reconvention be ordered to immediately vacate the Premises and deliver possession thereof to River Ranch, L.L.C. and River Ranch Development, L.L.C.

9

While clearly labeled an alternative to the main argument regarding the presence of a lease, the petition does not adequately allege sufficient material facts to place the opposing parties on notice of an alternative quantum meruit or unjust enrichment claim. Neither was the evidence or argument directed toward fulfillment of either of those claims. Evidence as to other potential businesses seeking that particular space or fair rental value of the space was not presented at trial. Accordingly, we find no error in the result reached by the trial court with regard to the damages associated with the use of the premises.

*Court Costs*

In their final assignment of error, the defendants assert that the trial court erred in assessing to them one-third of the court costs associated with the claim. They contend that since they were successful against all of the plaintiffs' claims, the totality of the costs should have been assessed against the plaintiffs.

Louisiana Code of Civil Procedure Article 1920 provides that: "Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." Considering that neither the plaintiffs nor the defendants prevailed on their respective claims at trial, we do not conclude that the trial court abused the discretion conveyed by Article 1920 when it assessed the defendants with one-third of the costs. This assignment lacks merit.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the defendants, River Ranch, L.L.C. and River Ranch Development, L.L.C., The Village of River Ranch Association, Inc., Robert W. Daigle and Rodney L. Savoy.

**AFFIRMED.**

10