| | | |
|---|---|---|
| INGA BARRE-WILLIAMS, WIFE OF/AND RAYMOND JULIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, RAYMOND JOSEPH WILLIAMS AND RYAN WILLIAMS | * * * * * | NO. 2020-CA-0665 COURT OF APPEAL FOURTH CIRCUIT STATE OF LOUISIANA |

\* \* \* \* \* \* \*

VERSUS

MARCUS WARE, M.D. AND
OSCHSNER CLINIC
FOUNDATION AND
HOSPITAL

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-10196, DIVISION "A"
Honorable Ellen M Hazeur, Judge
\* \* \* \* \* \*
**Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge
Rosemary Ledet)

Margaret E. Woodward
1229 N. Tonti Street
New Orleans, LA 70119

Daniel W. Nodurft
215 W. Judge Perez Drive, Suite B
Chalmette, LA 70043

COUNSEL FOR PLAINTIFF/APPELLANT

Don S. McKinney
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

Diana Cole Surprenant
ADAMS AND REESE, LLP
701 Poydras Street, Suite 4500

New Orleans, LA 70139

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**
**April 28, 2021**

*TFL*
*EAL*
*RML*

This appeal arises from a costs judgment in a medical malpractice action. Appellants, Lieutenant ("Lt.") Inga Barré-Williams, her husband, Raymond Williams, and her two sons, filed a petition against Appellees, Dr. Marcus Ware and Ochsner Clinic Foundation, in civil district court. After a jury trial, the jury found that Dr. Ware had breached the standard of care and awarded $326,000.00 in general damages to Lt. Williams, $19,000.00 in past medical expenses, and $7,000.00 in damages for lack of consortium to Mr. Williams. Appellants then moved to recover $111,128.05 of costs expended in bringing the suit. The trial judge awarded $35,807.12 in costs. Appellants now appeal this costs judgment, seeking an additional $71,720.00. We find that the trial court abused its discretion in not taxing costs for a number of expenses and hold that Appellants are entitled to recover an additional $19,203.15 for an amended costs award of $55,010.27. We also correct the costs for Dr. Castillon's pretrial preparation from $15,750.00 to $14,250.00. Last, we hold that Appellants are entitled to copy costs for

1

documents introduced into evidence and remand this matter to the trial court for reconsideration of which copy costs are compensable.

Accordingly, this judgment is affirmed in part, reversed in part, and remanded for such actions as may be consistent with the opinions expressed herein with regards to copy costs.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 16, 2013, Lt. Williams underwent an abdominal scan for a benign liver lesion at Tulane Medical Center. The scan incidentally revealed a calcified disc and spinal cord compression at a certain level of her spine, identified at that time as thoracic level T8-9. Surgical intervention was recommended and Lt. Williams was referred to Dr. Ware for a spinal surgery to correct the issue immediately and prevent paralysis. The surgery took place on February 10, 2014. During the surgery, Dr. Ware operated at a different level of the spine, removing tissue at thoracic level T7-8, instead of thoracic level T8-9. At some point in the surgery, Dr. Ware became aware that he had not found the calcified disc and states that he elected to abort the surgery and explore the area with Magnetic Resonance Imaging (MRI). The MRI revealed that Dr. Ware had not operated on the correct thoracic level. Lt. Williams consented to an additional surgery, in which the original defect was corrected.

Lt. Williams alleges that she experienced significant back pain since the surgeries and, with her husband and two sons, brought a negligence suit against Dr. Ware and Ochsner Clinic Foundation on October 13, 2016. The case was tried to a

jury from March 9, 2020, to March 13, 2020. The jury found malpractice by Dr. Ware, but rejected Lt. Williams' claim for lost wages and loss of enjoyment of life. The jury also rejected the loss of consortium claims brought by Lt. Williams' sons. The jury awarded $326,000.00 in general damages to Lt. Williams, $19,000.00 in past medical expenses, and $7,000.00 in damages for lack of consortium to Mr. Williams, for a total of $352,000.00. Judgment on the jury's verdict was entered on May 20, 2020. On May 28, 2020, Lt. Williams and her family filed a motion to tax costs against Dr. Ware and Ochsner Clinic Foundation in the amount of $111,128.05. Dr. Ware and Ochsner Clinic Foundation filed a memorandum in opposition to the motion to tax costs, asserting that Lt. Williams and her family were only entitled to $17,528.70 in costs. After a hearing, the trial court entered a judgment with reasons on September 25, 2020, granting the motion to tax costs in part, with a total award of $35,807.12 as taxable costs. Appellants filed this timely appeal.

## DISCUSSION

### *Standard of Review*

A trial court is afforded great discretion in awarding costs, and such an award is generally only disturbed upon a showing that the court abused its discretion. *Vela v. Plaquemines Parish Government*, 00-2221 to 00-2224, p. 29 (La. App. 4 Cir. 3/13/02), 811 So. 2d 1263, 1282. In reviewing an award under the abuse of discretion standard, "the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise

3

of discretion by the trier of fact." *Covington v. McNeese State University*, 12-2182, p. 11 (La. 5/7/13), 118 So. 3d 343, 351. Factual findings of the trial court in reaching an award are reviewed pursuant to the manifest error or clearly wrong standard of review. *Id*., 12-2182, p. 6, 118 So. 3d at 348. When examining factual findings under this standard of review, the appellate court does not determine whether the trier of fact was right or wrong, "but whether the factfinder's conclusions were reasonable," while viewing the record in its entirety. *Johnson v. Melton*, 03-1132, p. 3 (La. App. 4 Cir. 2/4/04), 867 So. 2d 804, 807. It is not sufficient for the appellate court to believe that it would have weighed the evidence differently and reached a different conclusion. *Id*.

However, "if the decision of the trial court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court." *Sewell v. Sewerage & Water Board of New Orleans*, 18-0996, p. 3 (La. App. 4 Cir. 5/29/19), --- So. 3d ----, ----, 2019 WL 2305673, *2. Indeed, while the "abuse of discretion standard is highly deferential,… a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law." *LCR-M Limited Partnership v. Jim Hotard Properties, L.L.C.*, 13-0483, p. 9 (La. App. 4 Cir. 10/9/13), 126 So. 3d 668, 675.

***Assignments of Error***

Appellants argue that the district court erred in eight respects: (1) finding that Appellants could recover only a portion of their court fees; (2) finding that Appellants could recover only a portion of the costs for expert witness Dr.

4

Castillon; (3) denying recovery of costs for expert witness Dr. Bartholomew; (4) denying recovery of costs for expert witness Dr. Higgins; (5) finding that Appellants could recover only a portion of costs for expert witness Dr. Jones; (6) finding that Appellants could recover only a portion of costs for expert witness Dr. Diethelm; (7) finding that Appellants could not recover the costs of depositions not admitted into evidence; and (8) restricting the expenses allowed by La. R.S. 13:4533.

### Statutory Provisions Authorizing the Award of Costs

Awards of costs are authorized by two main provisions of law. Louisiana Code of Civil Procedure article 1920 states that costs are generally paid by the party cast in judgment but that the court may render judgment for costs against any party, as it considers equitable. Louisiana Revised Statute 13:4533 states that the "costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs."

### Survey of Relevant Case Law

Louisiana jurisprudence has wrestled with the boundaries of the trial court's discretion to allocate costs through numerous cases over the years. *Cline v. Crescent City R. Co.*, 42 La. Ann. 35, 7 So. 66 (1890). With the advent of the overlapping statutory provisions discussed above, courts have focused on La. C.C.P. art. 1920 and La. R.S. 13:4533 to settle the matter. *Certain St. Bernard Parish Government Computer Disks v. St. Bernard Parish Government ex rel.*

*Ponstein*, 13-1054, p. 3 (La. App. 4 Cir. 12/18/13), 130 So. 3d 56, 58-59. The generally accepted principle is that while La. C.C.P. art. 1920 grants the court broad power to award costs it considers equitable, "[t]his equitable power to allocate costs is limited to costs that positive law identifies as taxable." *Bayou Fleet, Inc. v. Bollinger Shipyards, Inc.*, 15-0487, 15-0702, p. 20 (La. App. 4 Cir. 7/21/16), 197 So. 3d 797, 810. "Positive law" is defined as a "system of law promulgated and implemented within a particular political community by political superiors" and "typically consists of enacted law—the codes, statutes, and regulations that are applied and enforced in the courts." *Black's Law Dictionary* (11th ed. 2019). Courts have stated that the "types of costs recoverable as court costs are narrowly defined by statute." *Watters v. Department of Social Services*, 08-0977, p. 50 (La. App. 4 Cir. 6/17/09), 15 So. 3d 1128, 1162 (citing *Tipton v. Campbell*, 08-0139, pp. 26-28 (La. App. 4 Cir. 9/24/08), 996 So. 2d 27, 28). However, it is of note that La. R.S. 13:4533, one of the applicable statutes comprising the positive law, limits costs to "costs of the clerk, sheriff, witnesses' fees, costs of taking depositions and copies of acts used on the trial, <u>and all other costs allowed by the court</u>." La. R.S. 13:4533. (Emphasis added). Therefore, the positive law in this instance allows for discretion on the part of the trial court to set costs other than those specifically enumerated, as equitable.

Examination of recent cases provides the analysis this Court will use to construe the bounds of that discretion. In *Certain St. Bernard*, the trial court heard arguments on defendant's motion for summary judgment and in turn requested a

briefing regarding a novel theory raised by the plaintiff at that hearing. *Certain St. Bernard*, 13-1054, p. 2, 130 So. 3d at 58. At the hearing, the plaintiff had cited no case law in support of its theory. The trial court requested briefs on the issue and directed the parties to file on the same day, thereby eliminating the defendant's opportunity to reply to the plaintiff's brief. *Id.* The defendant's motion for summary judgment was granted and the defendant then filed for a rule to tax costs, seeking, among other things, the cost of the court transcript of the summary judgment proceeding. *Id.* The trial court granted that cost, and this Court affirmed. *Id.*, 13-1054, p. 11, 130 So. 3d at 62. On appeal, the plaintiff objected to this cost, arguing that the transcript was not "used on the trial", as required by La. R.S. 13:4533. *Id.*, 13-1054, p. 4, 130 So. 3d at 59. This Court stated that the statute's allowance for "copies of acts used *on the trial*" has generally been interpreted to "mean that a transcript is taxable only if offered into evidence". *Id.* Nonetheless, the Court went on to state that we have "recognized that costs 'necessary to bring [a] case to trial,' though not expressly offered into evidence, are within the trial court's discretion to tax." *Id.*, citing *Tipton*, 08-0139, p. 27, 996 So. 2d at 45. The Court then affirmed the cost of the transcript, finding that the trial court did not abuse its discretion in taxing the cost of the transcript, despite it not being offered into evidence. *Certain St. Bernard*, 13-1054, p. 5, 130 So. 3d at 60. In its analysis, the Court emphasized the necessity of the transcript, noting that because the plaintiff had cited no case law in support of its novel theory, the defendant needed to rely solely on the transcript to defend his position in the

7

briefing. *Id.*, 13-1054, p. 5, 130 So. 3d at 59-60. Furthermore, as the trial court requested that both parties submit their briefings on the same day, the defendant had no other opportunity to analyze and respond to the plaintiff's novel argument. *Id.* This holding confirms the court's discretion to tax costs not specifically enumerated as taxable but "necessary to bring a case to trial."

This Court's emphasis on the particular facts and circumstances creating the necessity of the transcript in *Certain St. Bernard* is consistent with our approach in *Butler v. Louisiana Mut. Medical Ins. Co. Butler v. Louisiana Mut. Medical Ins. Co.*, 15-1191, pp. 10-11 (La. App. 4 Cir. 5/25/16), 195 So. 3d 570, 577. In *Butler*, the defendants appealed the trial court's judgment of costs against them, including the costs of depositions not introduced at trial. *Butler*, 15-1191, p. 1, 195 So. 3d 570, 572. The defendants argued that La. R.S. 13:4533 authorized only the award of costs for depositions introduced at trial. *Id.*, 15-1191, p. 2, 195 So. 3d at 573. This Court explained that the "express language of La. R.S. 13:4533 suggests a broader interpretation than Defendants submit to this Court". *Id.*, 15-1191, p. 7, 195 So. 3d at 575. This Court acknowledged that although the statute "sets forth specific allowances…the statute's concluding phrase—'all costs allowed by the court'—indicates the legislature's intent to ultimately give deference to the judiciary." *Id.*, 15-1191, pp. 7-8, 195 So. 3d at 575. The Court acknowledged that the discretion vested in the judiciary is limited by what is equitable, in light of the facts and circumstances of the case. *Id.*, 15-1191, pp. 3-4, 195 So. 3d at 573. The Court also cited *Certain St. Bernard*, recognizing again the discretion to tax costs

necessary to bring a particular case to trial, even where those costs are not enumerated. *Id.*, 15-1191, pp. 7-8, 195 So. 3d at 575. Finding that the record was lacking sufficient evidence, including the record of the trial, the Court found no abuse of discretion by the trial court and affirmed its award of costs for depositions not introduced at trial. *Id.*, 15-1191, p. 13, 195 So. 3d at 578.

The third case we will examine is *Bayou Fleet*. In that case, Bayou Fleet, Inc. appealed a judgment taxing costs against it after a bench trial on a wrongful conversion action. *Bayou Fleet*, 15-0487, 15-0702, p. 1, 197 So. 3d at 800. The Court commenced its analysis by repeating the general rule that a trial court's "equitable power to allocate costs is limited to costs that positive law identifies as taxable." *Id.*, 15-0487, 15-0702, p. 20, 197 So. 3d at 810. In defining taxable costs under "positive law," the Court quoted the entirety of La. R.S. 13:4533, with the concluding clause "all other costs allowed by the court." *Id.* The Court in *Bayou Fleet* then reduced the cost award for the defendant's travel expenses to a deposition, an expense not specifically enumerated in the statute. *Id.* The Court does not state that the trial court abused its discretion in awarding travel expenses to a deposition because these expenses are not enumerated, but rather cites previous case law barring this type of expense, absent unusual circumstances. *Id.*

Although the outcome differs from that in *Butler* and *Certain St. Bernard*, the approach in *Bayou Fleet* is consistent with these cases. The Court in *Bayou Fleet* distinguished Butler in respect to its rejection of an award of expert witness fees supported only by a list of the fees. *Id.*, 15-0487, 15-0702, p. 21, 197 So. 3d

9

at 810.  *Butler* held that to award experts compensation, trial courts may rely solely on their own in-court observations and experiences, without the need for further proof.  *Butler*, 15-1191, p. 9, 195 So. 3d at 576.  The Court in *Bayou Fleet* noted that the record of *Butler* revealed that the judge awarding costs in that case was the same judge who oversaw the trial.  *Bayou Fleet*, 15-0487, 15-0702, p. 21, 197 So. 3d at 810.  Therefore, that judge had the requisite firsthand knowledge of the facts and circumstances of the case.  This was not the case in *Bayou Fleet*.  In *Bayou Fleet*, the judge awarding costs had not presided over the trial and was therefore unable to rely on their firsthand, in-court observation of the experts' work.  *Id.* The *Bayou Fleet* Court emphasized this particular circumstance to explain its less deferential approach to the lower court's award of expert fees that were not substantiated beyond a list.  *Id.*  Although *Bayou Fleet* distinguishes *Butler* in this regard, the two cases are overall consistent in their fact-based approach to evaluation of the types of "other costs allowed by the court."  La. R.S. 13:4533.

Taken together, these cases provide insight and direction into the methods of statutory interpretation this court should employ to determine what constitutes a proper award of costs.  Although the judiciary's equitable power to award costs is defined by the parameters of positive law, that positive law itself both expressly enumerates certain taxable costs and also grants discretion to allow other costs necessary to bring a case to trial, depending on the facts and circumstances of the case.  *Certain St. Bernard*, 13-1054, p. 5, 130 So. 3d at 60; *Butler*, 15-1191, pp.

10

10-11, 195 So. 3d at 577; *Bayou Fleet*, 15-0487, 15-0702, pp. 21-22, 197 So. 3d at 811.

## 1) Assignment of Error #1 - Court Fees

Appellants' first assignment of error is that the trial court erred in failing to fully award Plaintiffs' court fees. In its judgment, the trial court found it unreasonable to award courier fees and Information Technology ("IT") rental fees in the amount of $219.50 and $37.50 respectively, as they are "not specifically described under La. R.S. 13:4533 as taxable." The trial court does not state any other reason for disallowing these costs. Appellees argue that the court correctly followed the standard that only costs provided for by positive law can be taxed. However, La. R.S. 13:4533 specifically grants the court the discretion to allow "other costs" and the case law examined confirms this interpretation. *Butler*, 15-1191, pp. 7-8, 195 So. 3d at 575. The trial court misstated the law. In misstating the law, the court necessarily abused its discretion. *LCR-M Limited Partnership*, 13-0483, p. 9, 126 So. 3d at 675.

In this case, the courier fees relate to the filing of the Appellants' Patient Compensation Fund Complaint and the IT fees, a charge imposed by the judicial expense fund. Appellants argue that the courier fees were "necessary to bring the case to trial." However, court run fees are generally held to be unrecoverable fees. *Jeansonne v. Schmolke*, 09-1467, 09-1468, 10-437, p. 25 (La. App. 4 Cir. 5/19/10), 40 So. 3d 347, 364. Appellants produce no argument and cite no case law in support of their position that these generally prohibited fees were necessary to

11

bring their case to trial. On the other hand, this court finds that the IT fees are "necessary to bring a case to trial" because they are a charge by the judicial expense fund and Appellants were required to use the equipment provided. *Certain St. Bernard*, 13-1054, p. 4, 130 So. 3d at 59.

Appellees argue that even if courier and IT rental equipment fees are recoverable, this Court should defer to the trial court's equitable cost assessment because Appellants did not prevail at trial on their claim for lack of informed consent. Appellees state that this Court has regularly reduced recoverable costs when a party did not prevail on all issues at trial. However, the cases identified by Appellees support only the proposition that costs can be apportioned based on a finding by a trial court of a percentage of relative fault and that both parties are susceptible to costs if both prevail on their own claims. *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 16-0843, 17-0423 (La. App. 4 Cir. 2/21/18), 241 So. 3d 372; *Watters*, 08-0977, 15 So. 3d 1128; *Prejean v. River Ranch, LLC*, 03-462 (La. App. 3 Cir. 10/1/03), 856 So. 2d 1251. Neither scenario is apposite here. Appellants were not judged to be an at-fault party at trial, nor did Appellees bring a successful claim against Appellants below.

The trial court abused its discretion by declining to award courier fees and IT rental fees for the reason that these fees are "not specifically described under La. R.S. 13:4533 as taxable." We conclude that the IT fees are taxable as costs, but the courier fees are not.

**Assignments of Error #2-6 - Expert Witness Costs**

*Statutory Authorization of Expert Witness Fees*

Louisiana Revised Statute 13:3666 governs expert witnesses specifically and states that expert witnesses "shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required." Trial courts are required to determine the reasonable amount of expert fees either through the testimony of the expert in relation to the time and cost of his or her services or through a rule to show cause brought by the prevailing party for the purpose of determining the amount of expert fees to be paid by the party cast in judgment. La. R.S. 13:3666. In determining the reasonableness of an expert fee, courts look to the particular facts and circumstances of the case. *FIE*, 16-0843, pp. 50-51, 241 So. 3d at 405. The "amount actually billed by the expert is not determinative of the reasonable amount of taxable as costs." *Bayou Fleet*, 15-0487, 15-0702, pp. 21-22, 197 So. 3d at 811. Instead, the courts consider multiple factors, including:

> (1) the amount of time consumed by the expert in compiling his or her report; (2) the amount charged to the client; (3) the amount of time spent in preparing for trial; (4) the amount of time spent in court; (5) the expert's expertise; (6) the difficulty of the expert's work; (7) the amount of the award; and (8) the degree to which the expert witness's opinions aided the court in its decision.

*Id.*, 15-0487, 15-0702, p. 22, 197 So. 3d at 811.

Additionally, expert fees customarily may only be recovered for costs "incurred directly in connection with the expert's assistance at trial"; and an expert may receive fees for work they complete in preparation for trial, but "not consultations assisting the attorney to prepare for trial." *Buffman Inc. v. Lafayette*

*Ins. Co.*, 09-0870, 09-1241, pp. 40-41 (La. App. 4 Cir. 4/14/10), 36 So. 3d 1004, 1031. Although litigants are not required to utilize local experts, they are not entitled to additional fees in the event that out-of-state experts are relied upon where local experts are available. *Welton v. Falcon*, 341 So. 2d 564, 573 (La. App. 4th Cir. 1976).

**2) Assignment of Error #2 – Dr. Castillon**

Appellant's second assignment of error is that the trial court erred in ruling that Appellants could only recover $23,250.00, roughly half of the $53,656.60 they paid expert witness Dr. Castillon. Dr. Castillon served as Appellants' principal witness and represents the single largest expense in Appellants' cost petition. The issue, therefore, is whether the district court abused its discretion in awarding Appellants roughly half of this expert's total fee.

The trial court first listed and weighed the factors to be considered in determining a reasonable expert award. In examining Dr. Castillon's travel expenses to testify at trial, the court found "no statutory authority for the recovery of travel expenses to an out-of-state witness, and wire fee, and consultations with counsel" and disallowed these costs, citing two Third Circuit Court of Appeal cases. *Arrington v. Galen-Med, Inc.*, 02-784 (La. App. 3 Cir. 2/5/03), 839 So. 2d 429; *Myers v. Broussard*, 96-1634 (La. App. 3 Cir. 5/21/97), 696 So. 2d 88. *Arrington*, citing to *Myers*, states that there "is no statutory authority for the recovery of travel expenses to an out-of-state witness." *Arrington*, 02-784, p. 8, 839 So. 2d at 434. *Myers*, in turn, cites to *Welton*, a case from this Court that held

14

the more nuanced position that litigants are not entitled to additional fees for out-of-state experts where local experts are available. *Myers*, 96-1634, p. 25, 696 So. 2d at 101. Furthermore, in *Butler*, this Court recognized that although travel expenses for expert witnesses are not expressly authorized by statute, the trial court has the discretion to award costs as it deems equitable. *Butler*, 15-1191, pp. 4-5, 195 So. 3d at 573. In this case, the trial court emphasized that a more qualified local expert was available in Dr. Bartholomew. However, it was unreasonable to conclude that Dr. Bartholomew was "available" given his extreme reluctance to participate in the proceedings below due to his personal relationship with Dr. Ware, one of the defendants. Contrary to Appellees' assertions, the fact that Dr. Bartholomew testified at trial is not dispositive as to his "availability," as he was compelled to appear, if called. *Medine v. Roniger*, 03-3436, p. 7 (La. 7/2/04), 879 So. 2d 706, 711-12. Finding that the district court abused its discretion, we hold that the travel costs and associated wire fee of Dr. Castillon, $898.40, $608.20, and $25.00, are recoverable.

The trial court further stated that Appellants can only recover the time Dr. Castillon spent preparing to testify at trial and his per diem of $7,500.00 for the one day he testified. All other costs were disallowed, including Dr. Castillon's work in the Medical Review Panel phase ($15,750.00 for twenty-one hours of preparatory work for the panel and a separate $375.00 for a half-hour consultation before the filing of the petition). Appellants argue that because Appellees entered the panel decision into the record, they are entitled to the costs Dr. Castillon

15

expended in that proceeding. *See Butler*, 15-1191, p. 10, 195 So. 3d at 576, citing *Arrington*, 02-784, pp. 4-5, 839 So. 2d 429 at 431-32. However, *Arrington* stands for the proposition that appellants who succeed in the Medical Review Panel stage may recover the cost of depositions submitted to the panel when the panel opinion is later entered into evidence at a trial. *Arrington*, 02-784, pp. 4-5, 839 So. 2d 429 at 431-32. *Butler* acknowledges that the trial court has the discretion to fix additional compensation for witnesses, even if those witnesses did not participate at trial. *Butler*, 15-1191, p. 9, 195 So. 3d at 576. Although the trial court may have chosen, in its discretion, to award at least the panel phase deposition fee for Dr. Castillon, we cannot say that its decision not to do so was an abuse of discretion. Furthermore, in this case, unlike in *Butler* and *Arrington*, Appellants did not succeed at the panel stage and has cited no other statutory or case law supporting recovery of these costs. Appellants argue that equity requires supporting medical malpractice plaintiffs past the burdensome hurdle of the panel phase, but the fact that equity favors a result is not sufficient to find that the trial court committed an abuse of discretion in reaching the opposite result. Therefore, the trial court did not abuse its discretion in the matter of costs expended at the panel phase.

For the remainder of Dr. Castillon's fees, the trial court permitted recovery of costs for nineteen hours of work preparing for trial (at a rate of $750.00 per hour), as well as one per diem charge for the time spent testifying (a $7,500.00 fee). The trial court calculated that Appellants could thereby recover a total of

$23,250.00. However, nineteen hours at a rate of $750.00 per hour amounts to $14,250.00. The sum of $14,250.00 and $7,500.00 is $21,750.00, not $23,250.00. Under the trial court's own paradigm for calculations, the award it granted is incorrect. It is unclear exactly how the trial court arrived at the higher award of $23,250.00. Either the court committed a mathematical error, or it inadvertently neglected to annotate an additional expense of $1,500.00 which it ruled allowable. After careful examination, we find that the record is not sufficient to establish the exact number of hours Dr. Castillon spent in preparation for trial. Two charges lack detailed invoices. The record does reflect that at least eighteen and one-half hours were billed by Dr. Castillon outside of his work for the Medical Review Panel. Given that the trial court witnessed the work of Dr. Castillon firsthand and given the lack of a complete record of the charges Appellants seek on appeal, we find that the trial court's calculation of nineteen hours is likely a reasonable one.

Appellants further contend that the trial court neglected to include an additional four hours billed on Invoice no. 6; however, cross-reference to their counsel's total fees and costs list for Dr. Castillon does not support this allegation. Neither does the trial court state that it disallowed the additional four hours from Invoice no. 6.

In regards to the per diem costs awarded by the trial court, Appellants argue that Dr. Castillon's first day was spent, in part, reviewing a critical piece of discoverable material that Appellees delivered at the last minute. Dr. Castillon's Invoice no. 6 noted that the first day of charges expended was spent in pretrial

17

preparation, a cost that was incurred directly in connection with his assistance at trial. *Buffman*, 09-0870, 09-1241, pp. 40-41, 36 So. 3d at 1031. The record reflects Appellants' counsel's representation to court that Dr. Castillon traveled one day in advance specifically to review these new materials. Dr. Castillon confirmed as much during his testimony. Given that Appellants provide multiple, accurate citations to the record to confirm this, we find it was an abuse of discretion not to award at least some portion of the per diem for the preparatory work done on site. The record does not reflect the number of hours Dr. Castillon actually spent reviewing the new materials and acknowledges that at least some portion of the day was spent in transit. However, as the trial court accepted the $7,500.00 per diem to be reasonable for a half-day of in-person testimony, we hold that this same amount is reasonable for the on-site preparation and review of new materials.

Appellants also argue that the second per diem is recoverable because Appellants have a right to rebut evidence adduced by opponents and Dr. Castillon was present to listen to the testimony of Appellees' witnesses. *Buffman*, 09-0870, 09-1241, p. 11, 36 So. 3d at 1015. Appellants also state that because they were obligated to pay Dr. Castillon's full per diem on that day regardless of his activities, "it cost nothing to have him sit through" all the testimony. However, the amount billed by an expert is not determinative of actual recoverable costs. *Bayou Fleet*, 15-0487, 15-0702, pp. 21-22, 197 So. 3d at 811. Furthermore, there is a distinction to be drawn between the right to rebut evidence and the right to recover

costs incurred by an expert witness sitting in on the testimony of an opposing party or expert witness.

Although Appellees attack the reasonableness of Dr. Castillon's rate and fee, arguing that he padded his costs and charged a "grossly unreasonable" fee, the trial court appears to have reviewed the factors propounded in *Buffman* and found the rate sound. *Buffman*, 09-0870, 09-1241, p. 40, 36 So. 3d at 1031. In assessing the *Buffman* factors, it is clear that Dr. Castillon spent at least eighteen and one-half hours reviewing materials, delivered ninety-three pages of testimony, and at a rate lower than that normally charged by the Defendant Dr. Ware for his own services. Given the inherent complexities involved with explaining the standard of care in this field of medicine to a jury of lay people, and given the fact that Dr. Castillon was Appellant's principal expert witness, the jury necessarily relied on Dr. Castillon substantially to arrive at the sizeable award of $352,000.00 in damages at trial. The trial court's only objection to Dr. Castillon was that a local expert was available in Dr. Bartholomew. The trial court cited this sole fact as the basis for its ruling to bar travel costs, and in all other respects it relied on Dr. Castillon's accounting without reservation. For the reasons stated herein, we hold those travel costs to be recoverable, and, overall, find the trial court's reliance on Dr. Castillon's rate to be reasonable.

Therefore, we find that the trial court abused its discretion in regards to the travel costs and wire fee and the time spent reviewing new materials before testifying. The total recoverable costs for Dr. Castillon are as follows:

Travel expenses: $1,531.60 ($898.40 + $608.20 + $25.00)
Preparation for trial and compilation of reports: $14,250.00 (19 hours at $750.00/hour)
On site trial preparation: $7,500.00
Trial testimony: $7,500.00
Total: $30,781.60

**Assignments of Error #3-4 – Dr. Bartholomew & Dr. Higgins**

Appellants argue that the trial court erred in denying recovery of costs for expert witness Dr. Bartholomew, a neurosurgeon who served on the Medical Review Panel. Appellants also argue that the trial court abused its discretion in completely denying recovery of any costs for expert witness Dr. Higgins, a radiologist who analyzed the images Dr. Ware used as the basis for the surgery. The trial court relied on the same rationale as the basis for its decision to reject the costs of both of these witnesses. The issue for this Court, therefore, is whether the trial court abused its discretion in denying any award whatsoever for the services for these experts.

Generally, a "litigant is only entitled to recover as costs the expert fees incurred directly in connection with the expert's assistance at the trial" and an expert may not receive fees for consultations with attorneys to help them prepare for trial. *Buffman*, 09-0870, 09-1241, pp. 40-41, 36 So. 3d at 1031. The trial court noted that in *Bayou Fleet*, costs were not recoverable for a litigant who did not submit an affidavit from the expert and merely submitted a spreadsheet that did not describe the nature and extent of services performed. However, in that case, the litigant also did not submit invoices; and the only action they undertook to authenticate the amounts billed was through submission of an affidavit from the

law firm's office manager, not the attorney or expert. Furthermore, the judge awarding costs in *Bayou Fleet* was not the same judge who presided over trial, so the judge awarding costs was unable to rely on his or her firsthand knowledge of the testimony of the expert, as contemplated in La. R.S. 13:3666.

### 3) Assignment of Error #3 – Dr. Bartholomew

The facts before the Court in *Bayou Fleet* are dissimilar to the facts and circumstances in the instant litigation surrounding Dr. Bartholomew's fees. Appellants paid Dr. Bartholomew a $300.00 consultation fee, a $1,650.00 deposition fee, and a $4,500.00 fee for his trial preparation and testimony. Appellants submitted an itemized list of his charges, in addition to copies of checks for each expense and letters detailing the costs for three of the four expenses. Additionally, the trial court judge who presided at trial, at which Dr. Bartholomew provided extensive expert testimony for the jury, also later assessed costs. These circumstances are distinguishable from *Bayou Fleet*; and we find that the trial court's denial of any award of Dr. Bartholomew's fees on that basis, without any consideration of the work the court observed Dr. Bartholomew perform, to be an abuse of discretion.

Appellants concede that consultation fees, when solely for the benefit of the attorney, are typically not recoverable. *Bd. of Supervisors of La. State Univ. & Agric. & Meeh. Coll. V. 732 Canal St., L.L.C.*, 13-0976, p. 27 (La. App. 4 Cir. 1/15/14), 133 So. 3d 109, 127. However, Appellants argue that this case aligns with complex cases where jurisprudence allows extra trial preparation time,

21

including consultation with counsel. *Id.* In *732 Canal*, the jury award was nearly $10,000,000.00. While the instant case is certainly complex in the sense that expert witnesses were necessary at trial to explain medical terminologies and procedure to a lay jury, it does not meet the standard of complexity and scale contemplated by *732 Canal*. Therefore we find that an award of consultation fees is not appropriate in this case.

Appellants argue that the $4,500.00 which Dr. Bartholomew billed at his standard rate for trial preparation and testimony was improperly barred. Expert fees customarily may only be recovered for costs "incurred directly in connection with the expert's assistance at trial," and an expert may receive fees for work they complete in preparation for trial. *Buffman*, 09-0870, 09-1241, pp. 40-41, 36 So. 3d at 1031. Here, Dr. Bartholomew clearly appeared at trial, explained his credentials, provided over thirty pages of testimony to the court and explained why he believed Dr. Ware's actions to be malpractice. Indeed, the trial court seems to have held Dr. Bartholomew's testimony in such high regard that it suggested that Appellees should have relied on him as their principal expert. In light of these facts and circumstances, we find the trial court abused its discretion in barring the costs for Dr. Bartholomew's trial preparation and testimony and reverse its ruling to disallow these particular fees.

The deposition fee of Dr. Bartholomew will be addressed with the bulk of deposition fees sought by Appellants as part of their seventh assignment of error.

**4) Assignment of Error #4 – Dr. Higgins**

Dr. Higgins, a radiologist, was retained after Dr. Bartholomew determined that he needed assistance from a radiological expert to help interpret the images Dr. Ware relied upon for the initial surgery. Appellants state that Dr. Higgins spent "untold hours" reviewing the record to make sense of Dr. Ware's descriptions of the surgery. The record contains three checks to Dr. Higgins. The first check is for $1,200.00, dated March 21, 2017, and the second is for $1,000.00, dated February 11, 2020. Neither check indicates what the payments were for, but the check dated February 11, 2020 was accompanied by a letter from Appellants' counsel noting that it was for review of depositions in connection with trial preparation. Appellants assert that another $1,200.00 payment was made to Dr. Higgins, but no check or invoice was submitted into the record evidencing that payment. At trial, on March 10, 2020, Dr. Higgins disclosed that he had not discussed fees with Appellants until the Sunday preceding trial, on March 8, 2020. Dr. Higgins also stated that he had not wanted to discuss the matter of payment. At that time, Appellants' counsel asserted that a total of $2,200.00 had been paid to Dr. Higgins, although Dr. Higgins was only aware of $1,200.00 in payments. The only other information in the record regarding these payments is an itemized list counsel provided for all costs. That list does not reflect a rate for Dr. Higgins. The record is devoid of information setting forth Dr. Higgins' rate or the basis of his fees. To the contrary, Dr. Higgins implied that he did not want to charge Appellants at all and disclosed that he had not even discussed his rate until after he was already paid for this work. In light of these circumstances, and comparing the

situation to that in *Bayou Fleet*, the trial court reasonably found that it did not have sufficient information to award costs.

The third check to Dr. Higgins contained in the record was dated March 16, 2020, in the amount $15,000.00. The check was accompanied by a note explaining that the payment was for Dr. Higgins' testimony at trial. At trial, Appellants' counsel and Dr. Higgins confirmed that they agreed on a per diem rate of $5,000.00 per each day that Dr. Higgins would be "going into the courtroom and staying at the courtroom." However, the record only reflects one day of testimony from Dr. Higgins, on March 10, 2020. Appellants' counsel contends that Dr. Higgins came to trial "expecting nothing more than the $1,000 Plaintiffs advanced for trial preparation, because, as he testified 'it was the right thing to do.'" Appellants' counsel then states that they "forced Dr. Higgins to accept another $15,000.00, because that, too, was the right thing to do." However, the basis of an experts' fees is made "with reference to the value of time employed and the degree of learning or skill required," and this Court deems it unusual to press a fee on an expert larger than that agreed upon. La. R.S. 13:3666.

The trial court, in denying an award of Dr. Higgins' costs, did not assess the value of his work, which it had the requisite firsthand experience to ascertain. Instead, the court found that it lacked sufficient information on the extent of the services performed. However, Dr. Higgins was qualified by the trial court as an expert and did provide testimony that illustrated his extensive study of the radiological imaging used by Dr. Ware in the first surgery. At one point during

24

trial, Appellees' counsel stated that the "whole issue was what Dr. Ware reviewed at the time of the surgery, the images he reviewed." In light of the probative testimony Dr. Higgins offered regarding these images, the fact that the trial court judge who assessed awards also presided during this probative testimony, and the fact that Dr. Higgins testified as to the previously agreed upon fee of $5,000.00 per each day of his court appearances, we find that the trial court abused its discretion in entirely overlooking this information and barring any award for Dr. Higgins' testimony. However, as the record reflects that Dr. Higgins only testified for one day, Appellant is only permitted to recover $5,000.00 in costs, not $15,000.00.

### 5) Assignment of Error #5 – Dr. Jones

Appellant's fifth assignment of error is that the trial court erred in failing to award the full costs of Dr. Jones, a physical therapist who treated Lt. Williams. The issue for this Court is whether the trial court abused its discretion in awarding only $500.00 for Dr. Jones's costs. Appellants paid Dr. Jones $250.00 for reviewing the records and $1,500.00 for her trial testimony. The trial court did not explain its reasons for allowing Appellants to recover $500.00 in costs for Dr. Jones, but does make reference to Appellees' argument below that Dr. Jones's fee schedule provides $500.00 per hour for trial testimony; and Dr. Jones testified for under an hour.

Examining the facts and circumstances, no other materials exist in the record to support Dr. Jones's charge of $250.00 for records review, outside of Appellants' list of expenses. The transcript of testimony does not indicate whether Dr. Jones

reviewed any materials in advance. Neither does the transcript in the record reveal a rate for Dr. Jones to review records in preparation for trial. Although the trial court did not specify its reasons for excluding the records review charge, its exclusion of this charge is reasonable in light of the paucity of information on this expense. *Bayou Fleet*, 15-0487, 15–-702, p. 22, 197 So. 3d at 811.

In contrast, the trial court did review a fee schedule for Dr. Jones which detailed a $500.00 per hour rate for court appearances. Appellants argue that an increase in this cost is warranted because Dr. Jones had to travel from her practice in New Orleans East and then wait in court to be called to appear. They point to *Riche v. City of Baton Rouge*, a First Circuit Court of Appeal case that awarded $250.00 each to three expert witnesses for their brief testimony. *Riche v. City of Baton Rouge*, 541 So. 2d 905, 908 (La. App. 1st Cir. 1988). In that case, the court noted that the witnesses "were domiciled in Baton Rouge and were not required to travel any great distance." *Id.* Even if this comment did support travel times, Dr. Jones similarly only traveled within New Orleans, from New Orleans East to the New Orleans Civil District Court. Considering the brief time that Dr. Jones testified before the trial court and the fee schedule detailing her rate of $500.00 per hour of testimony, we find that the trial court did not abuse its discretion in granting a $500.00 award for Dr. Jones's testimony.

### 6) Assignment of Error #6 – Dr. Diethelm

Appellant's sixth assignment of error is that the trial court erred in failing to award the full costs of Dr. Diethelm, the radiologist with whom Dr. Ware

consulted prior to the surgery. Appellants sought to tax $1,185.00 for a deposition of Dr. Diethelm that was not introduced at trial, in addition to the cost of a subpoena with a private process server. The trial court granted the subpoena cost without issue but stated that depositions not admitted at trial are not recoverable and may not be taxed as costs. The issue for this Court is whether the trial court abused its discretion in barring the cost of Dr. Diethelm's deposition.

The general rule cited by the trial court is that while the statute allows costs for depositions "used at trial," to be considered "used at trial" for purposes of La. R.S. 13:4533, a deposition must be "introduced and accepted into evidence." *Watters*, 08-0977, pp. 50-51, 15 So. 3d at 1162. The trial court pointed to *Brecheen v. News Group, L.P.*, a Fifth Circuit case, for support. *Brecheen v. News Group, L.P.*, 11-1173 (La. App. 5 Cir. 12/11/12), 105 So. 3d 1011. In *Brecheen*, the court stated that it knew of no statutory authority for "the fee of an expert who is employed and paid by a litigant for work preparatory to trial, but who is not called to testify in the case." *Brecheen*, 11-1173, p. 37, 105 So. 3d at 1035. However, in *Brecheen*, the expert in question was not actually called to testify; whereas here Dr. Diethelm did testify. Appellants argue that the deposition was "used" in this case because Dr. Diethelm relied on her own deposition during her testimony. Appellants point to *Butler* to show that "use" can have broader meaning than entered into evidence. *Butler*, 15-1191, p. 7, 195 So. 3d at 575. In *Butler*, the Court affirmed the trial court's ruling that depositions not introduced at trial were taxable costs. *Id*. 15-1191, p. 13, 195 So. 3d at 578. *Butler* further

27

stated that "costs associated with the taking of deposition testimony of experts who actually testify at trial are likely to be considered necessary to bring a case to trial—if for no other purpose but to discover true facts to present at trial through witness testimony." *Id.* 15-1191, p. 11, 195 So. 3d at 577.

Here, the record reflects that Dr. Diethelm acknowledged that she refreshed her recollection prior to her testimony by reading the deposition. Throughout her testimony, Dr. Diethelm is prompted by counsel to recall items referenced in her deposition. Without review and reference to her deposition, Dr. Diethelm would not have been able to provide key pieces of information that Appellants relied upon in their cause of action. We find that in failing to take note of these facts and apply them to the legal standard articulated in *Butler*, the trial court abused its discretion and its conclusion to disallow the deposition cost for Dr. Diethelm was not a reasonable one. *Butler*, 15-1191, p. 11, 195 So. 3d at 577; *Johnson*, 03-11323, p. 3, 867 So. 2d at 807. We reverse the trial court's ruling and tax the cost of Dr. Diethelm's deposition to Appellees.

### 7) Assignments of Error #7 – Depositions

Appellant's seventh assignment of error is that the trial court erred in failing to award the costs of the depositions not admitted into evidence. Appellants sought a total of $4,391.97 for fourteen depositions, including depositions from the Medical Review Panel phase, and counsel's travel costs to take an out-of-state deposition. The trial court ruled that Appellants were allowed to recover only the costs of one deposition admitted into evidence. Thirteen depositions and the travel

28

expenses were not taxed as costs. The issue for this Court is whether the district court abused its discretion in restricting the award to the cost of one deposition admitted into evidence.

The prevailing rule that depositions must be introduced and accepted into evidence to be considered "used at trial" and taxable as costs was first articulated in *Succession of Franz* in 1962. *Succession of Franz*, 242 La. 875, 884-85, 139 So. 2d 216, 219 (1962); La. R.S. 13:4533. *Succession of Franz* was a reevaluation of an earlier holding, *Succession of Moody*. *Id.*, 242 La. at 882-83. *Succession of Moody* involved depositions that had been taken by a party to prepare for a trial that did not take place because the opposing party subsequently withdrew their suit. *Succession of Moody*, 229 La. 30, 33, 85 So. 2d 20, 21 (1956). The Court in *Succession of Moody* held that the phrase "used at trial" in La. R.S. 13:4533 was not intended to modify "depositions" and that depositions could be taxed as costs regardless of whether they were used at trial. *Id.* Seven years later, in *Succession of Franz*, the Louisiana Supreme Court re-examined the issue and held that, contrary to their holding in *Succession of Moody*, the Legislature intended that only depositions "used on the trial" were taxable. *Succession of Franz*, 242 La. at 882-83, 139 So. 2d at 218-19. The Court in *Succession of Franz* went on to find that depositions taken for discovery purposes and admitted into evidence qualified as "used on the trial." *Id.*, 242 La. at 884-85, 139 So. 2d at 219. The Court further stated that *Succession of Moody* represented an exception to the rule, and was "probably" the only ground for departing from the statute because *Succession of*

*Moody* involved a party who made compliance with the statute impossible by dismissing his claim before the depositions could be introduced at trial. *Id.*, 242 La. at 883, 139 So. 2d at 219.

Appellants cite to *Butler* for a more expansive view. In *Butler*, this Court stated that "costs necessary to bring a case to trial, though not expressly introduced into evidence, are within the trial court's discretion to tax." *Butler*, 15-1191, p. 10, 195 So. 3d at 577. *Butler* also posited that "costs associated with the taking of deposition testimony of experts who actually testify at trial are likely to be considered necessary to bring a case to trial." *Id.*, 15-1191, p. 11, 195 So. 3d at 577.

In the instant matter, Appellants seek to recover the costs of fourteen depositions, including thirteen that the trial court found were not admitted into evidence. Five of these depositions were taken of expert witnesses who later testified at trial (Dr. Bartholomew, Dr. Higgins, Dr. Ware, Dr. Diethelm, and Dr. Toomer) and one was for Appellant Lt. Barre's own deposition. Appellants argue that *Butler* requires holding these six depositions to be taxable costs because even though they were not admitted into evidence, they were taken of experts who did testify at trial. *Butler* does not apply to the deposition of Lt. Barre, who was not an expert witness. Furthermore, while *Butler* does uphold the trial court's allowance of costs of depositions not admitted into evidence for expert witnesses who testified at trial, it does not <u>require</u> that these depositions necessarily be taxed as costs. *Id.*, 15-1191, p. 13, 195 So. 3d at 578. When trial courts exercise their

discretion to disallow costs of depositions not admitted into evidence for experts who testify at trial, as was done here, such an exercise of discretion does not rise to an abuse of discretion, especially in light of the general rule promulgated to define and clarify the language "used at trial." *Succession of Franz*, 242 La. at 883-85, 139 So. 2d at 218-19.

Appellants also seek costs for the deposition of two experts who did not testify, Dr. Oncale and Dr. Steck. Appellants assert that they initially intended to read excerpts of Dr. Oncale's deposition to the jury; but when the court requested time be conserved, counsel instead opted to read the report directly attached to Dr. Oncale's deposition in lieu of reading the transcript. The trial court then ordered that this report would suffice as Dr. Oncale's testimony. In stating that the report, which was admitted into evidence and hence "used", sufficed as Dr. Oncale's testimony, the trial court implicitly acknowledged that the deposition testimony itself was also "used". La. R.S. 13:4533. Consequently, the trial court abused its discretion in not recognizing the use of Dr. Oncale's deposition at trial and abused its discretion in not awarding Appellants the $204.00 expended for the deposition of Dr. Oncale.

Regarding Dr. Steck's deposition, Appellants emphasize that Appellees relied upon his deposition transcript to cross-examine Dr. Castillon at trial. This Court has previously upheld partial cost awards for deposition transcripts used to impeach witness testimony where there was no evidence that the depositions were introduced at trial. *Tipton v. Campbell*, 08-0139, 08-0140 (La. App. 4 Cir.

9/24/08), 996 So. 2d 27. However, *Tipton* merely affirms the discretion of trial courts to award some costs for depositions not introduced into evidence. It does not in any way require trial courts to award these costs. Here, the trial court's statement of the general rule and subsequent denial of an award for these costs does not amount to an abuse of discretion.

Appellants further ask this Court to overturn the trial court's ruling that the costs of the two depositions of Ms. Hartman, Dr. Ware's surgical assistant, did not constitute a taxable cost. Appellants state that Ms. Hartman was deposed twice and that her second deposition was via video (taken by Appellees) and was later played for the jury because she was unavailable to appear at trial. Both parties agree that this deposition was admitted into evidence, but disagree on the associated expense. Appellees state that they paid for the video deposition, but Appellants state that Appellees only paid a portion of the expenses. The record does reflect two checks in relation to depositions of Ms. Hartman and further confirms that the deposition was admitted into evidence. As the costs of depositions admitted into evidence are generally recoverable, the trial court abused its discretion in not taxing the full costs associated with deposing Ms. Hartman. *Watters*, 08-0977, pp. 50-51, 15 So. 3d at 1162. Therefore we reverse the ruling disallowing recovery of these particular costs and award $745.05 to Appellants.

Three depositions relate back to the Medical Review Panel proceeding. Appellants argue that because Appellees entered the decision of the Medical Review Panel into the record, the costs associated with that proceeding should, in

the interest of equity and according to the principles expressed in *Butler* and *Arrington*, be taxed to Appellees. This argument was previously addressed. *Arrington* stands for the proposition that appellants who <u>succeed</u> in the Medical Review Panel stage <u>may</u> recover the cost of depositions submitted to the panel when the panel opinion is entered into evidence at a later trial. *Arrington*, 02-784, pp. 4-5, 839 So. 2d at 431-32. In this case, Appellants did not succeed in the panel phase and thus are not entitled to costs associated with the panel phase.

Appellants further contend that because Dr. Higgins and Dr. Castillon testified that they read all of the depositions in the case to inform their expert opinions in anticipation of trial and because this amounts to a "use" of the depositions at trial, these costs should be deemed taxable by this Court. However, there is a distinction to be drawn between a deposition being useful to an expert witness and a deposition being so clearly "used at trial" that the trial court must necessarily tax it as a cost, lest it constitute an abuse of discretion. *Butler*, 15-1191, pp. 9-10, 195 So. 3d at 566-67. Therefore, while Appellants assert that all the depositions were used in some way to advance Appellants' litigation, it was not an abuse of discretion for the trial court to elect not to tax these depositions as costs.

Finally, Appellants submit that the trial court erred in failing to award counsel's travel expenses in the amount of $478.77, which expenses were incurred when counsel travelled to take Dr. Castillon's deposition in Texas. The trial court, citing to *Franz*, ruled that the expenses of an attorney to take a deposition are not

within the realm of taxable costs.  Appellants counter that this Court has approved travel costs where equity supports the expense.  *Liquid Carbonic Corp. v. BASF Wyandotte Corp.*, 468 So. 2d 1225, 1233 (La. App. 4th Cir. 1985).  However, in *Liquid Carbonic*, the travel was necessary to comply with an overly broad and general discovery request that the opposing party refused to limit.  In this case, Appellants elected to travel, reasoning that it was cheaper for counsel to travel than to pay a per diem for the witness to travel.  However, Appellants could also have chosen not to travel at all, as Appellees so chose in taking Dr. Castillon's deposition by phone.  This is not a necessary expense akin to that in *Liquid Carbonic*, and, thus, the trial court did not abuse its discretion in withholding costs for counsel's travel to take the deposition of Dr. Castillon.

8) **Assignment of Error #8 – IT, Exhibit, Miscellaneous & Discretionary Costs**

*IT, Exhibit, & Miscellaneous Expenses*

Appellants' eighth assignment of error is that the trial court erred in restricting expenses allowed by La. R.S. 13:4533 for "copies of acts used on the trial." La. R.S. 13:4533.  The issue for this Court is whether the district court abused its discretion in restricting the award to $9,809.42, rather than awarding Appellants the $18,139.67 sought.

Louisiana Revised Statute 13:4533 mandates that "copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs." Louisiana Code of Civil Procedure Article 1920 states that "[e]xcept as otherwise provided

by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." *Mace v. Turner*, a Third Circuit Court of Appeal case, held that exhibit and technology costs incurred by the defendant, at a cost of $1,058.52, were reasonable and fell under "other costs allowed by law." *Mace v. Turner*, 18-339, pp. 6-7 (La. App. 3 Cir. 12/6/18), *(unpub.)*, 2018 WL 6433016, *4. The defendants in *Mace* noted that they actually saved money by not hiring a third party to operate the equipment used at trial. *Id.*, 18-339, p. 6, 2018 WL 6433016 at *3. Appellants argue that the trial court properly cited to *Mace* in considering the requested costs, but impermissibly departed from the rationale of *Mace* by denying IT staff expenses and the needle exhibit. In denying those expenses, the trial court explained its position that these costs "do not fall under the 'other costs allowed by law' noted in La. R.S. 13:4533." The trial court analyzed the award of court reporter fees and copying costs under this same rubric. However, the court misstated the statute in pertinent part, which language actually reads "other costs allowed by the court." La. R.S. 13:4533. This Court has expressly stated that although La. R.S. 13:4533 specifically mandates deposition costs, the statute "also permits other unspecified costs allowed by the trial court." *Vela*, 00-2221 to 00-2224, pp. 29-30, 811 So. 2d at 1282. In misstating and narrowing the law, the trial court effectively deprived itself of the discretion afforded it by the statute and thereby necessarily abused its discretion. *LCR-M Limited Partnership*, 13-0483, p. 9, 126 So. 3d at 675.

In performing its assessment of other cost and fee awards, the trial court properly analyzed the relevant body of case law interpreting the statute, and it granted some discretionary costs in keeping with the correct language of the statute. In such instances where the trial court did exercise its discretion, doing so was consistent with the broader language of the statute. For example, the court granted $3,769.70 for IT rental equipment, a cost that is not specifically named in the statute, but may be "allowed by the court." La. R.S. 13:4533.

Still, even if Appellants are correct in asserting that the trial court committed an error of law requiring a *de novo* review, the record before this Court is insufficient to determine which of these costs must be taxed as per the statute and which costs may be taxed as a discretionary matter as necessary to bring the case to trial. For example, it is unclear which copying costs were for records used at trial. Similarly, it is unclear which exhibit costs were incurred for use at trial.

Appellees cite *Orea v. Scallan* to show that trial courts do not abuse their discretion in refusing to tax similar expenses. *Orea v. Scallan*, 32,622 (La. App. 2 Cir. 1/26/00), 750 So. 2d 483. However, this Court is concerned that the trial court's omission of any award whatsoever as to copy costs incurred failed to account for the fact that many such copies may have been produced by trial counsel for use at trial and therefore should have been taxable, under the facts and circumstances of this case. *Butler*, 15-1191, pp. 3-4, 195 So. 3d at 573. We remand the matter of $18,139.67 in requested trial exhibit and IT rental equipment costs to the trial court to determine which additional copy costs are compensable.

### *Discretionary Costs*

The second part of Appellants' eighth assignment of error is that the trial court erred in restricting discretionary expenses of $1,500.41, including parking costs for counsel and a witness, mailing costs for motions, medical records, discovery, exhibits, trial supplies, consultation with counsel, meals with witnesses, and meals for jurors. The trial court held that the bulk of these costs were not recoverable, but did award costs for the juror meals. The issue before this Court is whether the trial court abused its discretion in not taxing as costs the full discretionary expenses.

Appellants argue that *Butler* allows for consultation costs regarding the viability of an action as part of its expansive view of pretrial discovery. However, in *Butler*, this Court did not hold that such consultation costs must be taxed, nor did the Court actually tax these costs. Instead, this Court deferred to the judgment of the trial court in determining which expenses were solely for consultation and which were accomplished in preparation for trial. *Butler*, 15-1191, pp. 11-12, 195 So. 3d at 577. Here, the trial court, in its discretion as an active participant in the trial, did not find this cost to be reasonable. Notwithstanding Appellants' assertions to the contrary, the trial court was under no obligation set by precedent to rule otherwise; and its decision does not constitute an abuse of discretion. Similarly, the court declined to tax other discretionary costs it was not obligated to award, simply stating that such costs were not recoverable. Again, the decision not to tax "other costs" not designated as mandatory by statute, is not an abuse of

discretion.  La. R.S. 13:4533.  Therefore, the trial court did not abuse its discretion in declining to award the consultation fee and other discretionary costs.

Appellants also argue that the trial court committed an error in stating that the cost of meals for civil juries can be taxable as costs under *Meyers*, but then omitting the cost of one of the juror meals.  However, while the First Circuit in *Meyers* allows costs for juror lunches, it does not require that all costs for juror meals be taxed.  *Meyers v. Basso*, 381 So. 2d 843 (La. App. 1st Cir. 1980).  Here, the trial court stated that meals for civil juries can be taxed as costs and then proceeded to tax part of those costs.  The trial court properly exercised its discretion to decide how much of these costs it considered equitable.  La. C.C.P. art. 1920.

Therefore, we find that the trial court did not abuse its discretion in awarding only a portion of the discretionary costs requested by Appellants.

**CONCLUSION**

For the reasons set forth herein, we reverse those portions of the trial court's judgment wherein the trial court committed an abuse of discretion in restricting Appellant's taxable costs and hold that Appellants are entitled to recover:

1. IT rental fees in the amount of $37.50.

2. Costs for expert witness Dr. Castillon in the amount of $1,531.60 for travel expenses and $7,500.00 for on-site pre-trial preparation.

3. Costs for expert witness Dr. Bartholomew in the amount of $4,500.00 for his trial preparation and testimony at trial.

4. Costs for expert witness Dr. Higgins in the amount of $5,000.00 for his testimony at trial.

5. Costs for expert witness Dr. Diethelm in the amount of $1,185.00 for her deposition.

6. Costs for expert witness Dr. Oncale in the amount of $204.00 for his deposition.

7. Costs for witness Ms. Hartman in the amount of $745.05 for her deposition.

Additionally, we correct the costs for Dr. Castillon's pretrial preparation from $15,750.00 to $14,250.00 for nineteen hours of work at a rate of $750.00 per hour. Accordingly, we tax Appellees with additional costs of $19,203.15 and total costs of $55,010.27.

This matter is remanded to the trial court for reconsideration of which copy costs are compensable. In all other respects, the trial court's judgment is affirmed.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**